Hunter Louis **GIRAULT**

v.

**The UNITED STATES.**

**No. 50474.**

United States Court of Claims.

Nov. 8, 1955.

Paul R. Harmel, Washington, D. C., for plaintiff. Geiger & Harmel, Washington, D. C., were on the briefs.

LeRoy Southmayd, Jr., Washington, D. C., with whom was Warren E. Burger, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

WHITAKER, Judge.

In our opinion filed April 5, 1955 in this case we held, 130 F.Supp. 343, that two documents, called to the attention of the Secretary of War after he had held that plaintiff was entitled to receive retired pay because incapacitated for active service, which incapacity he had held was an incident of his military service—we held that these two documents constituted newly discovered evidence, which authorized the Secretary of War to reopen the case. We further held that his decision reversing his prior decision was not arbitrary, and, hence, was binding on us.

After plaintiff's motion for a rehearing, we reexamined the question and have now concluded, first, that the alleged "newly discovered evidence" was not unavailable before the first decision of the Secretary of War and was not substantial enough to authorize him to reopen the case, within the rule laid down in the cases of Spencer v. United States, 102 F.Supp. 774, 121 Ct.Cl. 558, certiorari denied 344 U.S. 828, 73 S.Ct. 29, 97 L.Ed. 644, and Carlin v. United States, 100 F.Supp. 451, 121 Ct.Cl. 643.

Secondly, we have concluded that, while the Secretary's action in reversing his former decision was not arbitrary, in the sense that there was a wanton disregard of plaintiff's rights, it was, nevertheless, so clearly erroneous, and so obviously contrary to law that we must hold it to have been arbitrary, in the sense that it was an abuse of discretion.

In such case we have jurisdiction to set it aside and render that decision which the facts and the law require. Dismuke v. United States, 297 U.S. 167, 56 S.Ct. 400, 80 L.Ed. 561; Silberschein v. United States, 266 U.S. 221, 45 S.Ct. 69, 69 L.Ed. 256; Garfield v. United States ex rel. Goldsby, 211 U.S. 249, 29 S.Ct. 62, 53 L.Ed. 168; Carlin v. United States, supra, and other cases therein cited.

Before discussing the alleged "newly discovered evidence," we must state the facts in order that this evidence may be evaluated.

Plaintiff first enlisted in the United States Army in 1916. He was severely wounded in action during the first World War, contracted active tuberculosis, and resigned his commission as captain in 1925.

Because of his prior training and experience and his knowledge of the military science, the Army sent an emissary to him, when we entered World War II, to induce him to reenter the service. Plaintiff applied for a commission, but his physical examination showed that he suffered from chronic bronchitis, and for this reason he was rejected. Plaintiff was drawing compensation on account of this disability, but he executed a sworn statement waiving "all disability compensation from the United States Government for the period during which I hold a temporary commission in the Army of the United States." He was thereupon accepted and reported for active duty as captain on March 21, 1942.

After two years in the service, plaintiff was treated for arterial hypertension and retinitis, hypertensive type, and for arteriosclerosis. He was ordered before a Retiring Board.

This Board found that plaintiff was incapacitated for active duty because of arteriosclerosis and arterial hypertension, but found that these diseases were not an incident of plaintiff's military service.

At plaintiff's request, the Retiring Board was reconvened to consider additional evidence offered by plaintiff, but it

adhered to its former findings. Plaintiff protested the findings. On review, the Surgeon General recommended the matter be returned to the Board for further consideration. This was done, but the Board again adhered to its former findings.

Then the Surgeon General, on review of the findings, made this recommendation to the Adjutant General:

"In view of the evidence submitted in the record in that this officer's arterial hypertension, moderate, was manifested in the service on or about March 1944, approximately two years subsequent to this officer's entrance upon active duty and no evidence has been submitted to indicate clearly the existence of this condition prior to March 1944, it is the opinion of this office that this officer's hypertension should be considered the result of an incident of service."

Following this, the Separations Board of the War Department recommended that that part of the findings of the Retiring Board which held that plaintiff's incapacity was not an incident of the service be disapproved. The Secretary of War concurred, and held that the cause of plaintiff's incapacity was an incident of the service.

The Adjutant General then certified plaintiff's name to the Veterans' Bureau for retirement pay in the amount of $215.62 monthly.

About two months later, the Veterans' Administration forwarded to the Adjutant General a photostatic copy of a letter written that Bureau by plaintiff's wife on December 9, 1940, prior to the beginning of his second period of military service, and it also forwarded a statement made by plaintiff prior to his entry upon his second period of service at the time he underwent a physical examination by the Veterans' Administration. There was also enclosed the Veterans' Administration's report of the physical examination that had been made of plaintiff by this Bureau on February 27, 1941.

Upon the basis of this so-called newly discovered evidence, the Secretary of War reopened the case and again referred it to the Retiring Board.

As might be expected, the Retiring Board adhered to its three former decisions and held that plaintiff's incapacity was not an incident of the service. Plaintiff appealed to the Secretary of War.

On review, the Surgeon General made this statement in his recommendation to the Adjutant General, after having reviewed the so-called newly discovered evidence:

"It is the carefully considered opinion of this office that this officer had his arteriosclerosis and hypertension for some time prior to February 1941, and that his continuous rest during 1940, alleviated his symptoms but had he admitted the true history when he was examined for appointment in January 1942, he would never have been qualified. It is further the opinion of this office that this officer's incapacities where not permanently aggravated by the military service."

The Adjutant General thereupon advised plaintiff that his appeal to the Secretary of War from the findings of the Retiring Board had been denied, and the Adjutant General also notified the Veterans' Administration that plaintiff was not entitled to retirement benefits.

We held in Spencer v. United States, supra, and Carlin v. United States, supra, that the findings of the Secretary of War on a man's eligibility to retirement pay was final and could not be reopened, except in the case of fraud, substantial new evidence, mistake of law, or mathematical miscalculation.

■ The first question we must answer is whether or not the information furnished the Secretary of War by the Veterans' Administration, after he had rendered his decision holding that plaintiff was entitled to retired pay, constituted substantial newly discovered evidence. We must hold that it did not.

In the first place, this evidence was readily available for consideration of the Retiring Board and the Secretary of War before he rendered his decision holding plaintiff to be entitled to retirement pay. The War Department knew that plaintiff had been drawing compensation from the Veterans' Administration prior to his entry into the service, because the Army consented to issue plaintiff a commission only after plaintiff had executed a waiver of all compensation benefits which he had been receiving from the Veterans' Administration, so long as he held a temporary commission in the Army. The Retiring Board and the Secretary of War, therefore, knew that plaintiff must have had a physical examination by the Veterans' Administration. The exercise of less than ordinary diligence required the Retiring Board and the Secretary of War to call on the Veterans' Administration for such information as it had prior to the rendition of its decision.

 No court would set aside its judgment on the ground that such evidence was newly discovered. The rule applicable to a court should be applied to such a decision of the Secretary of War. Such evidence must have been produced before the initial decision of the Secretary of War, at the peril of the Government. Since it was so readily available, it cannot possibly be considered to have been newly discovered evidence. Newly discovered evidence is only such evidence as could not have been discovered by the exercise of due diligence prior to the rendition of the initial decision of the Secretary of War.

██ Nor do we think this so-called newly discovered evidence was "substantial" newly discovered evidence. Bear in mind that the question before the Secretary of War was whether or not plaintiff's arteriosclerosis and arterial hypertension were an incident of the service. If he had had these diseases prior to his entry into the service, they could not have been said to be an incident of his service unless aggravated by his service. So, the question is whether or not he had these diseases before he entered the service.

The letter from plaintiff's wife to the Veterans' Administration sheds absolutely no light whatever on whether or not he had this condition before he entered the service. This merely shows that plaintiff never did regain his strength after he had been gassed during the First World War; that after only moderate exertion he showed unusual fatigue; that he complained of being unable to get enough breath, and that he had to give up his business. This condition could have been caused as easily by his having been gassed as by arteriosclerosis and arterial hypertension. During plaintiff's service he was treated for active tuberculosis. Tuberculosis of course could have caused the condition described by plaintiff's wife.

Plaintiff's statement to the Medical Bureau shows that he got tired too easily, and was subject to occipital headaches; and would often run a little fever; that when he bent over he would get dizzy; that if he walked fast he would feel like he was not getting enough air; that he took cold easily; and that he had continually lost weight over a period of two or three years. The condition plaintiff himself described could of course be due either to tuberculosis or to his having been gassed, equally as well as to arteriosclerosis and arterial hypertension.

The special heart examination made by the Veterans' Administration said nothing about arteriosclerosis and arterial hypertension. Under the heading of "Diagnosis" this report stated: "Functional class One—Code 418490—Sinus arrhythmia, slight myocardial changes." It will be noted nothing was said about arteriosclerosis and arterial hypertension.

The other examinations quoted in finding 26 say nothing of arteriosclerosis and arterial hypertension.

Plaintiff was not drawing compensation from the Veterans' Administration for arteriosclerosis or arterial hypertension, but for chronic bronchitis.

Even if this evidence could be considered as newly discovered evidence, we have no hestitation in saying that it was not substantial enough to warrant reopening the case.

Lastly, we are compelled to hold that the second decision of the Secretary of War, holding that plaintiff's incapacity was not an incident of the service, was so clearly erroneous and so obviously contrary to law, that we must hold it to have been arbitrary, in the sense that it completely disregarded the regulations of the War Department, to which we shall later refer, and gave weight to evidence so out of proportion to its real probative value as to force us to conclude that there was not a reasonable exercise of discretion on the part of the Secretary of War when he reversed his prior holding.

Army Regulations 40–1025, paragraph 63 (12 Dec. 1944), quoted in part in finding 42, provides that a disease or injury contracted or sustained while in the active military service "will be presumed to have been incurred in line of duty, unless there is substantial evidence to show that such disease or injury—
* * *

"(4) Existed prior to the individual's current active service and was not aggravated by the service (g below).

"c. General inference.—Lacking evidence to the contrary, a disease or injury of a militarized person will be presumed to have been service-connected, and, therefore, in line of duty. * * *

"g. Existed prior to individual's current active service and was not aggravated by service (EPTS).

* * * * *

"(2) Basic provision.—Irrespective of length of service, an Army patient will be presumed to have been in sound condition upon entering active service, unless the disease or injury, or the conditions which brought about the disease, injury, or death, were noted on the patient's physical examination upon entrance into the service, or unless clear and unmistakable evidence ( (3) below) demonstrates that the injury or disease, or the conditions which caused the disease, injury, or death, though not noted, existed prior to the patient's active service.

* * * * *

"(3) Clear and unmistakable evidence.—Medical judgment alone, as distinguished from well-established medical principles, will not be considered sufficient to rebut the presumption of the patient's sound condition at the time of his entrance into active military service. * * * "

In addition, Army Regulations 605–250, dated March 28, 1944, paragraph 30–c (a), quoted in finding 43, provides:

"Before a retiring board should find that the disability which renders an officer incapable of performing the duties of his office are not caused by an incident of the service, such fact shall be established beyond a reasonable doubt."

No one could possibly say that the three pieces of additional evidence considered by the Retiring Board and the Surgeon General and Secretary of War, after the case had been reopened, rebutted the presumption that plaintiff was not suffering from arteriosclerosis or arterial hypertension when he entered the service. These documents did not consist of that "clear and unmistakable evidence" to show that the disease existed prior to the patient's active service. By no stretch of the imagination could it be said that the fact of his having had these diseases before he entered the service were by these documents "established beyond a reasonable doubt."

The members of this court are not doctors, of course, but they are trained in evaluating even medical testimony. We could not possibly say that these three documents, even taken in conjunction with other testimony, established "clear and unmistakable evidence" that plaintiff had these diseases before he entered the service. Certainly we cannot

say that this fact has been established beyond a reasonable doubt.

Hence, we cannot but conclude that the second finding of the Secretary of War was clearly contrary to the law, and in this sense must be held to have been arbitrary.

In our opinion, except for the bar of the statute of limitations, plaintiff would be entitled to recover, but the statute of limitations bars him.

Plaintiff's suit was brought on December 18, 1951; therefore, if his right of action accrued prior to December 18, 1945, it is barred.

On May 2, 1945, the Adjutant General, following the decision of the Retiring Board on February 2, 1945, and the Surgeon General's recommendation of April 26, 1945, notified plaintiff that his incapacity was not an incident of his service, and he also notified the Veterans' Administration that plaintiff was not entitled to retirement pay.

We are of opinion that plaintiff's right of action accrued at this time.

■ It is true that the Act of June 22, 1944, 58 Stat. 284, 287, as amended by the Act of December 28, 1945, 59 Stat. 623, 38 U.S.C.A. § 693i, gave a disabled officer who had been retired or released from active service, without pay, the right, at any time within 15 years from the date of retirement for disability, to request a review of the findings of the Retiring Board by the Review Board authorized by that Act; but the officer was not required to request such a review before he could come into court.

The Act of September 26, 1941, 55 Stat. 733, 734, 10 U.S.C.A. § 456A, 38 U.S.C.A. § 12, providing for retired pay for reserve officers, gave the Secretary of War the power to determine the eligibility of such officers to the benefits of the Act, "including all questions of law and fact relating to such eligibility". The Secretary of War made this determination on April 26, 1945. The plaintiff could have immediately requested a review by the Disability Review Board; but if he thought the action of the Secre-

tary of War was unlawful, because beyond his power or because arbitrary, he could have come directly to this court to have it set aside. It would be nonsensical to require a plaintiff making such an allegation to go before this Review Board before coming to court, since the decision of the Review Board, to have any binding effect, had to be approved by the same Secretary of War whose prior decision was alleged to have been arbitrary.

It is obvious that a review by the Disability Review Board was not required before the Secretary's decision became final, since such a request for review might be made at any time within 15 years from the time the officer was retired. Certainly it was not intended that the statute of limitations on bringing suit should be suspended for so long a time.

All of these boards, the Retiring Board, the Disability Review Board, and the Board for Correction of Military Records act only in an advisory capacity to the Secretary of War. If his decision on the retirement rights of an officer is alleged to have been arbitrary, then the officer's right to come to the court for redress accrues as soon as the arbitrary decision is rendered.

■ Indeed, the statutes did not contemplate court review at all; full and complete jurisdiction to determine an officer's right to retire for disability was lodged in the Secretary of War, acting for the President. Resort to the court can only be had if the Secretary's action is arbitrary or unlawful. As soon as it appears that the Secretary is acting in such a manner, the officer can appeal to the court for redress.

■ In Cuiffo v. United States, 131 Ct.Cl. 60, we held that where pursuit of an administrative remedy was not mandatory, but permissive only, the statute was not tolled while it was being pursued. We reaffirm that holding. Plaintiff's later request for review by the Disability Review Board did not toll the statute. See also Mistretta v. United States, 120 F.Supp. 264, 128 Ct.Cl. 41,

45. Cf. Louis Rosnick v. United States, 129 F.Supp. 958, 132 Ct.Cl. 1.

We must, therefore, hold that plaintiff's claim is barred by the statute of limitations.

The former opinion and findings of fact are withdrawn, and this opinion and findings of fact are substituted therefor and will become the opinion and findings of fact of the court. Our former conclusion of law will stand.

Plaintiff's motion for a rehearing is denied and his petition remains dismissed.

JONES, Chief Judge, and LARA-MORE, MADDEN and LITTLETON, Judges, concur.